CASE 5—ACTION BY THE LOUISVILLE BRIDGE COMPANY AGAINST GUS G. COULTER, AUDITOR, FOR AN INJUNCTION.—OCTOBER 22.

## Coulter, Auditor v. Louisville Bridge Co.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

TAXATION—FINALITY OF ACTION OF ASSESSING OFFICERS.

Held:    Where the proper assessing officers, in the time and substantially in the manner prescribed, have acted in fixing the valuation on property liable to assessment for taxation and no relief has been sought, in the time allowed for correction of their action, it is final.

CLIFTON J. PRATT, ATTORNEY GENERAL, FOR APPELLANT.

The appellant filed a general demurrer to the plaintiff's petition, which was overruled by the lower court, and failing to plead further the court granted a permanent injunction according to the prayer of the petition from which judgment this appeal is prosecuted.

Coulter, Auditor v. Louisville Bridge Company.

The question presented is whether, the former Board of Valuation and Assessment, by declaring there was "no franchise," can estop the present board from fixing the value of the appellee's franchise?

The Constitution, section 174, provides "that all property, whether owned by natural persons or by corporations, shall be taxed in proportion to its value unless exempted by the Constitution."

The capital stock of a corporation includes the entire property, real and personal, including assets on hand, to be valued as an entirety from which deduct the tangible property already assessed and the net balance shows the franchise value which is subject to taxation.    Henderson Bridge Co. v. Com., 99 Ky., 641; Henderson Bridge Co. v. Negley, 23 R., 756.    The undisputed facts in this case show that the value of appellee's franchise was $662,998 for the year in question.

The duty of the board is to *fix the value* of the franchise. It has no power to *exempt* the franchise from taxation. To say that there is *"no franchise,"* as the appellee contends was done, was in effect to release its property from taxation.

It has been held in Stone, Auditor v. City of Louisville, 22 Rep., 423, that "The board of valuation and assessment has power to make retrospective assessments for franchise taxes."

No injustice was done the appellee by fixing its franchise, as the admitted facts show that it had such a franchise subject to the tax imposed by law.        '

CHARLES H. GIBSON & W. S. PRYOR, FOR APPELLEE.

There were two hearings before Auditor Stone and his board on the question of whether there was any franchise to be taxed, resulting in *"no franchise,"* as alleged in the petition.

The present auditor concluded the valuation of the bridge was too low, and undertook to make a re-valuation and fixed an estimate on the value different from that of the former board.

There is no evidence or statement that any mistake was made, misrepresentation or fraud practiced by any one in the former assessment.

We contend that there must be some finality to such important matters, and if a reduction or increase of values is to prevail as each board coming into power may estimate former values, there will be no end to the litigation that will necessarily arise, and no permanence in any finding by such boards, but all will be left open for correction by subsequent boards, without any evidence of fraud, mistake or concealment of values charged.

OPIN'ON OF THE COURT BY JUDGE O'REAR—AFFIRMING.

The Louisville Bridge Company filed with the auditor of public accounts in September, 1898, its report as of September 15, 1898, then required of it by law to enable the value of its franchise to be ascertained and assessed for taxation by the board of valuation and assessment for the year 1898. The report was duly received by the auditor, and was by him submitted to the board of valuation and assessment, and considered and acted upon by the board, who valued appellee's franchise at the sum of $529,998. The auditor directly notified appellee, in writing, of such valuation, advising it that under the law it had thirty days within which to be heard on the subject. Within the thirty days appellee presented to the auditor and the board a written protest and appeal, in which it set forth facts and reasons why the valuation fixed by the board was erroneous and should be reduced. The substance of this representation was that the board had valued appellee's capital at $1,-787,000, which was $287,000 in excess of its par value. It was represented, and by the report above referred to was shown, that appellee did not earn for the current year as much as 6 per cent. of its capital stock of a million and a half by some $10,354.94. It was furthermore shown that of its capital stock there was $240,000 of it invested in the State of Indiana. This, it was claimed, should either be first deducted from the value of the capital, or added to the value of its tangible property in Kentucky, and then deducted from the value of its capital. It was furthermore shown that, even if it were assumed that its capital was correctly valued, yet its tangible property in Kentucky was assessed as follows:

Real estate assessed by the county assessor.... $  180,915
Bridge property assessed by the county assessor.  1,387,740
Railroad track assessed by railroad commis-
sioners  ...................................    98,900
                                              _____

    Total  ............................... $1,667,555

To this sum it was claimed that there should be added, as the board had uniformly done before, the assessed value of the company's tangible property in Indiana, which would bring the total to $1,907,555. It was thus shown that the company for that year was paying taxes on its tangible property at a valuation in excess of its capital, even when valued at the figure originally fixed by the board. Upon this showing the then board of valuation and assessment, who are and then were by law charged with the duty of assessing franchises of such corporations for taxation, determined and decided that under the rule which had been adopted and was then in force, and by which this and all similar corporations were assessed for the taxation of their franchises, there was no value to this franchise to be assessed. It therefore entered upon the records that were kept in the auditor's office in such cases the words "No franchise," thereby meaning to find and finding that the valuation which upon consideration the board had placed upon the property was such that, for the purpose of taxation under the statute in question, it was nil. In the year 1900 the present board of valuation and assessment took up and reconsidered appellee's report first herein referred to, and thereupon revalued appellee's franchise thereunder at the sum of $662,998, disregarding the action of its predecessor, and making such a record of its action as constitutes evidence of such valuation and assessment by it. It notified appellee of its action, and demanded of it the payment within 30 days of taxes on said assessment, amounting to

$3,480.74, and a penalty of 20 per cent., amounting to
$696.15; making in all $4,176.89. Thereupon appellee filed
this suit in the Franklin circuit court, and, upon notice of
preliminary hearing, obtained a temporary injunction, issued
out of that court against the auditor, restraining him from
taking further steps towards collecting this tax or penalty.
Upon final hearing upon the facts above shown, the petition
being taken as true without answer, the temporary injunc-
tion was perpetuated, and the auditor has appealed.

The position taken on this question by appellant and the
board of valuation and assessment is that although their
predecessor considered and passed on the question of the
valuation of appellee's property, in order to assess its fran-
chise for taxation, the present board can review their ac-
tion, and, if the former act does not correspond with their
views, they can reassess the property, or, as there appears
no assessment (that is, no certificate of value), they may
regard it as properly omitted from assessment. It must be
borne in mind that this is not a case of omitted listing or
assessment, nor is there a suggestion even of a mistake on
the part of the officers. The question resolves itself into
this: Is there a time where the action of the assessing offi-
cer becomes final both as to the citizen and the taxing pow-
er? The question is not here involved as to the effect of
the assessor's act if he had erroneously decided that appel-
lee's property in question was not liable to taxation, nor
is the question of the power of an assessor to exempt the
property of one taxpayer from its proper share of the pub-
lic burden involved; for in this case no such purpose is
stated or intimated. On the contrary, it was shown that
the assessing board actually acted upon the identical evi-
dence required by the statute, exercised their judgment as
to fixing the value of the property, and found the fact to

be that when there was applied to appellee the same standard by which the valuation of the franchises of all other corporations in this State was arrived at, and the one. approved by this court in the case of Henderson Bridge Co. v. Com., 99 Ky.. 623 (17 R., 389) (166 U. S., 150) 31 S. W., 486, 29 L. R. A., 73, appellee's franchise had no taxable value. That this conclusion was honestly arrived at, and was correct, is not denied. If the board of 1898 had fixed a. valuation of $100,000 on appellee's franchise, acting under the same circumstances as shown in this case, and appellee had paid the tax, could appellant and his associates constituting the present board have ignored that action, and revalued and reassessed the franchise? If they could, then there is no end to this thing. Nor would there be to any assessment or listing of any property for taxation by any assessing board or assessor.

We are of opinion and hold that when the proper assessing officers, within the time and substantially in the manner prescribed by statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation, and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final. The judgment and action of the assessor based upon the legal evidence then obtainable and at hand, and as fixed by statute, when recorded in the proper tax lists, in the very nature of things, should be conclusive upon the State, as well as against the taxpayer. Such being the judgment below, it is affirmed.